## Commonwealth ex rel. Sharpe *v.* Sharpe, Appellant.

162

Argued June 20, 1960. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-
GOMERY, JJ.

*Charles F. Mayer,* for appellant.

*Angelo A. DiPasqua,* with him *Melvin E. Caine,* and
*Caine and DiPasqua,* for appellee.

OPINION BY WOODSIDE, J., September 16, 1960:

This is an appeal from an order entered by the Court of Quarter Sessions of Delaware County against a son for the support of his father.

The action was brought, and the order entered, under the Act of June 24, 1937, P. L. 2045, §3, as amended, 62 P.S. §1973, which provides: "The . . . child . . . of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct."

After a hearing, the court below directed the defendant to pay his father $150 to cover outstanding debts and to pay him $50 per week for his support. The appellant contends that the court abused its discretion by making what he considers an excessive weekly order, and that the court had no authority to direct the payment of $150 because this action constituted an illegal retroactive order.

The father and son operated a prosperous building supply business incorporated as the Wilshar Lumber Co. The father had failed in a similar business during the depression of the thirties and has no recorded interest in the corporation, although he has always been a salaried officer and apparently had much to do with the development of the corporation's assets, which are substantial. The business was started by the father with his wife's money, and all the stock is held by the defendant and his mother.

For the past thirty years, the father, with the knowledge of the wife, and while living in the same house with her, maintained a meretricious relationship with another woman. As he advanced in age, he became concerned about the future of this woman and, having no recorded interest in the business to pass on to her,

sought a contract requiring the corporation upon his death to pay $100 a week to her for ten years. The refusal of the son to do this led to a family feud, which resulted in the father being removed from the corporate payroll and forced to leave the home in which he was living. The son arrested the father for assault and battery. The father brought this action for support, and an equity action claiming an interest in the business. The wife brought an action of divorce against him. We are conscious, of course, as was the court below, that we are dealing here only with the question of support.

The father was separated by his son from a life of luxury and from corporate assets accumulated, at least partly, through his efforts. He is forced, at the age of 66 and in poor health, to face life with an income of $116 per month from social security. He is indigent as the term is used in the above statute. *Commonwealth ex rel. Home for the Jewish Aged v. Kotzker,* 179 Pa. Superior Ct. 521, 525, 118 A. 2d 271 (1955).

The son and the corporation apparently each measare their assets in six figures. The business is prosperous. Expensive automobiles, a cabin cruiser, a speed boat, and similar luxuries were at the disposal of father and son, and now remain for use by the son alone. Without detailing the evidence, we find there is every indication that the son has a substantial income and substantial assets.

In the course of the hearing, the financial status of the corporation became an issue, and the court sought information from the corporate records. The defendant then indicated that he would be willing to pay $50 per week to the father rather than have these records examined.

We recognize that the order of $50 per week is higher than would normally be imposed upon a son

for the support of a father, but the unusual and involved business and family relationships make this case particularly appropriate for this Court to give broad discretionary authority to the court below.

We have carefully examined the record and conclude therefrom that Judge DIGGINS, who heard this case and wrote the opinion, gave it fair, careful and thoughtful consideration. Most important, however, is the fact that the order was in the nature of an agreed order which the court offered to re-examine if the defendant presented the corporate books for examination, and it appeared therefrom that the order was too high. The father had been blackguarding the business, and the judge warned him that if this continued any resulting damage to the business would also require a reconsideration of the order. The judge also noted that the order would require reconsideration if the father was successful in the equity case.

The appellant has shown no abuse of discretion by the court below in entering the weekly order.

The direction to pay $150 to the father for obligations previously created was a retroactive order. *Keller v. Commonwealth*, 71 Pa. 413, 417 (1872). Although retroactive orders are permissible in some types of support actions, (See *Commonwealth v. Shavinsky*, 180 Pa. Superior Ct. 522, 119 A. 2d 819 (1956)), they are not permissible in actions like this one. *Commonwealth ex rel. Price v. Campbell*, 180 Pa. Superior Ct. 518, 119 A. 2d 816 (1956).

The order is amended by striking out the payment of the $150, and as amended is affirmed.

---

CONCURRING OPINION BY WRIGHT, J.:

The amount of this order, while unusually high, was in effect agreed upon. It is therefore apparent that the

lower court is not to be charged with an abuse of discretion. However, it should be emphasized that the duty of a child to support a parent is purely statutory and is not to be measured by the more generous standard which is used in appraising the common law duty of a husband and father to support his wife and children. Whether or not this father "was separated by his son from a life of luxury", and however affluent the son's station in life, the statute merely requires the son to "care for and maintain, or financially assist". It is my view that the legislature did not intend anything more than a comfortable standard of maintenance based on actual need, certainly not a standard high enough to enable the father to continue a meretricious relationship.

GUNTHER, J., joins in this concurring opinion.